UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY GEORGE WOODS, | ) | CIVIL ACTION NO. 4:21-CV-1052 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| SUPERINTENDENT LAUREL | ) | |
| HARRY, *et al.,* | ) | |
| Defendants | | |

## MEMORANDUM OPINION
*Named Defendants' Motion to Dismiss (Doc. 15)*

I.  INTRODUCTION

Barry George Woods is suing prison staff and officials, alleging violations of 42 U.S.C. § 1983 and multiple state laws. The Prison Litigation Reform Act requires Mr. Woods to exhaust his available administrative remedies before filing this suit. But prison staff and officials carry the burden in showing that Mr. Woods failed to exhaust his administrative remedies. In this case, the defendants have not met this burden, so, their Motion to Dismiss will be denied.

II.  BACKGROUND AND PROCEDURAL HISTORY

Barry George Woods (Mr. Woods or "Plaintiff") started this *pro se*, fee paid action when he filed a Complaint on June 15, 2021. (Doc. 1). In the Complaint, he lists thirteen defendants: (1) Superintendent Laurel Harry, (2) Deputy Superintendent Michael Gourley, (3) Security Captain Mark Becker, (4) Lieutenant ("Lt.") Warner, (5) Lt. Troutman, (6) Licensed Practical Nurse ("LPN") Stacy

Nolan, (7) Corrections Officer ("CO") John Doe A, (8) CO John Doe B, (9) CO John Doe C, (10) CO J. Kiner, (11) Prison Rape Elimination Act ("PREA") CO David Radziewicz, (12) Bureau of Investigations and Intelligence ("BII") Director James Barnacle, and (13) BII Lt. Beth Evans. (*Id.* at p. 1). Mr. Woods is suing each of these defendants in their individual and official capacities. (*Id.*). The underlying facts and Plaintiff's legal claims can be best divided into three categories: (1) a December 24, 2019 assault by corrections officers, (2) withheld meals on December 25 to 28, 2019, and (3) claims arising from reporting his mistreatment. Plaintiff's alleged assault and subsequent denial of meals occurred at State Correctional Institution - Camp Hill ("SCI Camp Hill"). I will discuss each in turn, and I will assume the allegations in the Complaint are true.[1]

    A.    THE DECEMBER 24, 2019 ASSAULT

On December 23, 2019, Plaintiff requested and was placed in protective custody at SCI Camp Hill. (*Id.* at 7). The next day, on December 24, 2019, after an interview with psychologists, Plaintiff was walking back to his cell wearing "Level Five Restraints," with CO John Doe A walking behind him, holding the restraint leash. (*Id.* at 8). John Doe A then brought Plaintiff "to a small hallway beneath the bubble," where he was met by COs John Does B and C. (*Id.*). Then the assault began;

---

[1] At the motion to dismiss stage, the Court "must accept all factual allegations in the complaint as true . . . ." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

COs John Does A and B repeatedly punched and kicked Plaintiff. (*Id.*). Between the punches and kicks, John Does A and B made Plaintiff tell them why he was imprisoned (a parole violation) and referred to the crimes he was convicted of ("your daughters – really?").[2] (*Id.* at 8). CO John Doe C then told Plaintiff: "You are going to sign yourself out of this block immediately. If you do not, I will kill you." (*Id.* at 8-9). After John Doe C asked this question, John Doe A punched Plaintiff, and Plaintiff stated he understood the demand. (*Id.*). John Doe A then brought Plaintiff back to his cell, while punching and shoving Plaintiff from behind. (*Id.*). Plaintiff was not given lunch on this day. (*Id.*).

Later that day, Lt. Troutman and LPN Stacy Nolan visited Plaintiff in his cell. (*Id.* at 9). Plaintiff told Lt. Troutman and LPN Nolan about the assault and Lt. Troutman took pictures of Plaintiff's injuries. (*Id.*). Plaintiff told Lt. Troutman that the John Does were not wearing their name tags, and that four CCTV cameras captured his assault. (*Id.*). Lt. Troutman told Plaintiff that he could not do anything about the missed lunch but would verify the identities of the John Does. (*Id.*).

Plaintiff claims this assault violated the Eighth Amendment's prohibition against deliberate indifference, poor and inhumane prison living conditions, and

---

[2] Plaintiff "pled guilty in 2003 to committing sexual crimes including rape against his two daughters." *Commonwealth v. Woods*, No. 2450 EDA 2019, 2021 Pa. Super. Unpub. LEXIS 104, at * 1 (Pa. Super. Ct. Jan. 12, 2021).

retaliation. (*Id.* at 7, 15). Because of this, Plaintiff argues he is entitled to money damages under 42 U.S.C. § 1983.

    B.    DENIED MEALS FROM DECEMBER 25 TO 28, 2019

On December 25, 2019, CO J. Kiner came to deliver breakfast and lunch trays to Plaintiff. (*Id.* at 10). Officer Kiner opened the wicket door for five seconds, but then closed it before Plaintiff could retrieve the trays. (*Id.*). On this day, Plaintiff only ate dinner. (*Id.*).

The next day on December 26, 2019, Officer Kiner taunted Plaintiff by showing him his breakfast and lunch trays through the wicket but closed the wicket before Plaintiff could retrieve the meals. (*Id.*). Officer Kiner remarked "you have to be quicker than that." (*Id.*). Again, on this day, Plaintiff only ate one meal, dinner.

On December 27 and 28, 2019, Officer Kiner put Plaintiff's full breakfast and lunch food trays into the trash in front of Mr. Woods. (*Id.* at 11). After Officer Kiner trashed Plaintiff's food on December 28, he remarked, "[Plaintiff] must be on a hunger strike." (*Id.*).

For a six day period Plaintiff was not given eating utensils, a cup to drink from, or an ability to shower. (*Id.* at 11). He also went without toilet paper for some time. (*Id.*). On December 30, 2019, Plaintiff was transferred to State Correctional Institution – Phoenix ("SCI Phoenix"). (*Id.*).

Because he was denied meals, Plaintiff argues that he has causes of action based on his First Amendment's right to petition the government to redress a grievance, the Eighth Amendment's protections against deliberate indifference and inhumane prison living conditions, and retaliation. (*Id.* at 16). Because of this, Plaintiff argues he is entitled to money damages under 42 U.S.C. § 1983.

C. ADMINISTRATIVE GRIEVANCES

Plaintiff made two separate and contemporaneous complaints to prison staff about the assault and denied meals. On the day of his assault, he reported it to Lt. Troutman and LPN Stacy Nolan. (Doc. 1, p. 12). Then, when his meals were being withheld, he complained to other officers and "request[ed] a white shirt." (*Id.* at 11-12). No one responded to his complaints or his request for a "white shirt." (*Id.*).

After he was transferred to SCI Phoenix, on January 6, 2020, he mailed a written incident report to the PREA office in Harrisburg.[3] (*Id.* at 12). The report covered all the abuse from December 24 to December 28, 2019. (*Id.*). Plaintiff was interviewed by Lt. M. McClain Jr., on February 7, 2020, and wrote a second incident

---

[3] The PREA office Plaintiff refers to is an office within the Pennsylvania Department of Corrections that oversees compliance with the Prison Rape Elimination Act (PREA). *See, Prison Rape Elimination Act (PREA)*, PA. DEP'T OF CORR., https://www.cor.pa.gov/Facilities/Prison_Rape_Elimination_Act/ (last visited Jan. 13, 2022).

report. (*Id.*). On March 3, 2020, and April 30, 2020, he wrote the PREA office to request an update on the investigation. (*Id.*). He did not receive a response. (*Id.*).

On May 26, 2020, PREA Coordinator David Radziewicz acknowledged receipt of Mr. Woods' letters and told him that his accusations are not PREA related, signaled to him an investigation was underway, but it was delayed due to the COVID-19 pandemic.[4] (*Id.* at 13). The two men then exchanged more letters over the next six months, with Plaintiff asking an update of the investigation, and with Mr. Radziewicz telling Plaintiff that he has no updates for him. (*Id.*).

Plaintiff was interviewed by Lt. M. Wade on February 8, 2021 and wrote a third incident report. (*Id.* at p. 12). Lt. Wade told Plaintiff that his report would be forwarded to BII Lt. Beth Evans. (*Id.*).

Plaintiff also sent two letters on February 11, 2021 and March 24, 2021 to BII Director James Barnacle asking for an update on an investigation. (*Id.* at p. 13-14). He received no response. (*Id.*).

Plaintiff claims that "the [Department of Corrections] is deliberately & maliciously dragging their feet, attempting to sweep this investigation under the rug." (*Id.* at 17). He contends these acts violated his First Amendment right to

---

[4] Mr. Woods attaches Mr. Radziewicz's responses to his Complaint. In his responses, Mr. Radziewicz tells Plaintiff that the PREA office does not investigate assaults, and that other offices handle those investigations. Some of the letters say that BII Director and Security Captain Mark Becker of SCI Camp Hill were cc'ed.

petition the government to redress grievances and his Eighth Amendment right to be free from retaliation. (*Id.*).

      D.      HIS REMAINING CLAIMS, RELIEF REQUESTED, AND PROCEDURAL HISTORY

Plaintiff claims that all the actions taken against him is a hate crime, (*Id.* at 17), and cites to 18 Pa. C.S. § 2710 (making ethic intimidation a crime). (*Id.* at 18). He does not specify which defendants committed a hate crime against him, or what protected class he belongs to. He also alleges an intentional infliction of emotional distress ("IIED") claim, but he does not specifically identify whom exactly he is seeking a IIED claim against. (*Id.* at 20).

Because of these alleged wrongs, Plaintiff seeks "compensatory damages in the amount of $100,000.00 against each of the defendants jointly and separately [and] punitive damages in the amount of $20,000.00 against each of the defendants jointly and separately." (*Id.* at 21). He also seeks the actual costs and expenses incurred in this suit. (*Id.*).

On September 28, 2021, Defendants James Barnacle, Mark Becker, Beth Evans, DSFM Michael Gourley, Superintendent Harry, Officer J. Kiner, Stacy Nolan, David Radziewicz, Lt. Troutman, Lt. Warner ("Moving Defendants") filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. (Doc. 15). On October 12, 2021, Moving Defendants filed their Brief in Support. (Doc.

16). On October 18, 2021, Plaintiff filed a Brief in Opposition, (Doc. 17), and on November 1, 2021 filed a Supplemental Brief without leave of Court (Doc. 19). Moving Defendants filed a Reply Brief on November 17, 2011. (Doc. 20). Without leave of Court, Plaintiff filed a Brief in Opposition to Moving Defendants' Reply Brief. (Doc. 21). The motion is now ripe for resolution.

III. STANDARDS FOR MOTIONS TO DISMISS AND SUMMARY JUDGMENT

Moving Defendants filed a motion to dismiss but invite the Court to convert it to a motion for summary judgment if it deems it necessary to grant the motion. So, I will discuss the standards this Court must apply to decide both types of motions.

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and ultimately determine whether Plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In review of a motion to dismiss, a court must "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where they are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminister Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief' and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the Court of Appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow the court to draw the reasonable

> inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011).

A motion for summary judgment is governed by under a well-established standard. Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *Anderson,* 477 U.S. at 248-49).

In adjudicating a summary judgment motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). When the non-moving party's evidence contradicts that advanced by the movant, then the non-movant's must be taken as true. *Big Apple BMW*, 974 F.2d at 1363.

Provided the moving party has satisfied its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, that show a genuine issue for trial, and it may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *see also* Fed. R. Civ. P. 56(c). A non-moving party's failure to show a genuine issue of material fact for even one essential element of a claim after the moving party has met its burden renders all other facts immaterial, and it is enough to permit summary judgment for the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

IV.     ANALYSIS

Here, I will discuss why this motion should be interpreted as a Motion to Dismiss and not a Motion for Summary Judgment, why I cannot consider Moving Defendants' declaration, and why Moving Defendants have not carried their burden in proving their affirmative defense. However, before that, I will discuss the Prison Litigation Reform Act's exhaustion requirements.

   A.     THE PRISON LITIGATION REFORM ACT'S EXHAUSTION REQUIREMENTS

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust available administrative remedies prior to filing an action challenging prison conditions in court. The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted.

42 U.S.C. § 1997e(a).

In accordance with Section 1997e(a), the exhaustion of available administrative remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of

whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77.

"The only limit to § 1997e(a)'s [exhaustion] mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. 632, 648 (2016) (quoting § 1997e(a)). The Supreme Court has noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id*. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. at 643-44. "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.* "But when a remedy is . . . essentially 'unknowable'- so that no ordinary prisoner can make sense of what it demands - then it is also unavailable." *Id.* (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1323 (11th Cir. 2007)).

Third, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644 (citing *Davis v. Hernandez,* 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" (emphasis deleted); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that administrative remedies were unavailable to a prisoner when the prison failed to timely respond to the prisoner's "grievance and then repeatedly ignored his follow-up requests for a decision on his claim").

Failure to exhaust available administrative remedies is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), so the defendant has the burden of pleading and proving that the prisoner failed to exhaust administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). A plaintiff does not have to plead in the complaint that they exhausted their administrative remedies. *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014). Considering these two requirements, a failure to exhaust claim will rarely dispose a prisoner's claim at the motion to dismiss stage. *See*, *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) ("In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6). Otherwise, defendants must produce evidence

proving failure to exhaust in order to carry their burden."); *see also*, *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (A court can dismiss a claim based on an affirmative defense pursuant to a Rule 12(b)(6) motion if "the affirmative defense clearly appears on the face of the pleading").

> B. SHOULD THIS MOTION BE CONVERTED INTO A SUMMARY JUDGMENT MOTION?

Moving Defendants ask the Court to consider the declaration of Deborah Alvord, an individual with knowledge and access to SCI Camp Hill's grievance process and records. (Doc. 16, pp. 7-8). Ms. Alvord's declaration states that she queried the records "from SCI-Camp Hill and [] confirmed that Inmate Woods did not file any grievances regarding te [sic] issues the alleges in his complaint. . . ." (Doc. 16-1, p. 3). Sensing that consideration of the declaration falls outside the scope of a motion to dismiss, Moving Defendants invite the Court to convert the filing to a motion for summary judgment, if necessary, to consider the declaration. (*Id.* at 4-5). I will decline to do so and consider Moving Defendants' filing as a motion to dismiss.

Rule 12(d) of the Federal Rules of Civil Procedure reads:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The court has the discretion to apply Rule 12(d) and convert a Rule 12(b)(6) filing into a motion for summary judgment, or to continue to treat the filing as a motion to dismiss. *Yuratovich v. United States DOJ*, No. 13-cv-5651, 2015 U.S. Dist. LEXIS 164118, at *8 (D.N.J. Dec. 8, 2015).

The last sentence of Rule 12(d) includes a notice requirement, and pursuant to that requirement, the court must notify the parties of the conversion and give the parties a chance to present evidence. Notice to the parties must be adequate, and for *pro se* prisoners, that means that the court must notify them of Rule 56's requirements, their probable need to file a Rule 56[(d)] affidavit, and the consequences of failing to do so. *Renchenski v. Williams*, 622 F.3d 315, 339-40 (3d Cir. 2010) (citing *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992)). Because of these notice requirements, courts are not particularly enamored with Rule 12(d) conversation as applied to *pro se* prisoners. *See, e.g., Escalera v. Harry*, No. 1:15-cv-2132, 2016 U.S. Dist. LEXIS 136010, at *26-27 (M.D. Pa. Sept. 28, 2016) (report and recommendation adopted by 2016 U.S. Dist. LEXIS 153924 (M.D. Pa. Nov. 7, 2016)) ("[t]he requirement of providing notice - and the delay it entails - could be avoided if the defendants properly frame their motions from the outset."); *Vailette v. Lindsay*, No. 11-cv-3610, 2014 U.S. Dist. LEXIS 114701, at *20-21 (E.D.N.Y. Aug. 14, 2014) (declining to convert a 12(b)(6) motion to a Rule 56 motion because of the lack of notice provided to *pro se* prisoner plaintiff). *See also*, *E.I. du Pont de*

*Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (stating that converting a motion to dismiss into a motion for summary judgment "is not appropriate where the parties have not had an opportunity for reasonable discovery").

As applied here, I decline to convert this filing to a motion for summary judgment. First, if I convert the motion, this case will be needlessly delayed because the Court will have to explain to Plaintiff (1) the conversion, (2) the summary judgment standard, (3) his probable need to file a Rule 56 (d) affidavit, and (4) the consequences of failing to do so. Second, the Parties' briefs are not framed as summary judgment motions, and neither party has abided by Local Rule 56.1, which governs motions for summary judgment. Third, Plaintiff has not had a chance to conduct discovery on the issues raised by Moving Defendants. This is an especially important point considering that Plaintiff alleges failures in the administrative grievance process. (Doc. 1 at p. 17) ("Plaintiff avers that the D.O.C. is deliberately and maliciously dragging their feet, attempting to sweep this investigation under the rug . . . [violating the] 1st Amendment – Right to petition government to redress grievance"); (Doc. 19, p. 5) ("The Plaintiff avers that the grievance process was not available to him at SCI Camp Hill.").

    C.    AS A MOTION TO DISMISS, WHAT CONSIDERATION CAN I GIVE TO MOVING DEFENDANTS' DECLARATION?

In a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). However, Ms. Alvord's declaration does not fall within any of these types of documents. And, when deciding motions to dismiss, a court cannot consider "copies of [plaintiff's] grievances and appeals, the Department of Corrections' responses to them, and declarations from grievances coordinators," because the motion would have to be converted to a motion for summary judgement. *Berry v. Klem*, 283 F. App'x 1, 4 (3d Cir. 2008). Therefore, because I am treating this filing as a motion to dismiss, I cannot consider Moving Defendant's declaration.

    D.    AS APPLIED HERE, MOVING DEFENDANTS HAVE NOT CARRIED THEIR PLEADING BURDEN

Failure to exhaust under the PLRA is an affirmative defense, and the burden falls on the Moving Defendants to show Plaintiff has failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Moving Defendants originally sought to dismiss all claims against all named defendants for Plaintiff's failure to exhaust. (*See generally* Doc. 16). However, in their Reply Brief, Moving Defendants conceded that Mr. Woods "sufficiently

averred, at this pleading stage that he has exhausted his administrative remedies as to his Eighth amendment claims against Officer Kiner." (Doc. 20, p. 3). But, as to the other named defendants, Moving Defendants claim that "Woods . . . provides no argument as why he was unable to file a proper grievance, while housed at SCI-Phoenix, as it relates to the remaining claims and named Defendants." (*Id.* at pp. 3-4).

As a threshold matter, Moving Defendants have not established that Mr. Woods failed to exhaust his administrative remedies. It is not clear on the face of the Complaint that Mr. Woods has not exhausted his administrative remedies. Moving Defendants have not provided any information at this stage that will give the Court the option to dismiss this case. Regardless, Moving Defendants changed their position on whether Plaintiff has exhausted his remedies towards some of Plaintiff's claims. So even if I converted this filing into a summary judgment motion, Ms. Alvord's declaration would be of limited and questionable value.

IV. CONCLUSION

Proving PLRA exhaustion falls on a defendant. Because a motion to dismiss constrains the court to only analyzing the pleadings, it will be exceedingly difficult for a defendant to carry their burden of proving exhaustion. That is no different in this case; Moving Defendants' Motion to Dismiss will be denied.

An appropriate Order will follow.

Date: February 17, 2022						BY THE COURT

										*s/William I. Arbuckle*
										William I. Arbuckle
										U.S. Magistrate Judge