UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY GEORGE WOODS, | ) | CIVIL ACTION NO. 4:21-CV-1052 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| SUPERINTENDENT LAUREL | ) | |
| HARRY, *et. al.*, | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION
*(On Defendants' Motion to Partially Dismiss the Amended Complaint (Doc. 53))*

## I.    INTRODUCTION

Barry George Woods ("Plaintiff") is an inmate at State Correctional Institution at Forest. Plaintiff initiated this action against numerous State Correctional Institution at Camp Hill officials ("SCI Camp Hill"), alleging violations of his constitutional rights, failure to comply with Department of Corrections' policies, the perpetration of a hate crime against him, the intentional infliction of emotional distress and violations of United Nations' resolutions. (Doc. 48). Currently before the Court is Defendants' Motion to Partially Dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 53). The parties have consented to proceed before a United States Magistrate Judge. (Doc. 74). The Court has reviewed Defendants' motion, the briefs, and Plaintiff's amended complaint. For the reasons explained in this Opinion, Defendants' Motion will be granted in part and denied in part.

## II.    BACKGROUND & PROCEDURAL HISTORY

Plaintiff lodged this *pro se* action on June 15, 2021 against thirteen SCI Camp Hill officials. (Doc. 1). On July 9, 2021, Plaintiff paid the filing fee and the complaint was deemed filed. On September 28, 2021, Defendants filed a Motion to Dismiss limited to Prison Litigation Reform Act Exhaustion. (Doc. 15). That Motion was denied on February 17, 2022. (Docs. 22, 23). On July 15, 2022, Plaintiff filed a Motion to Amend Named Defendants. (Doc. 37). On September 8, 2022, the Court deemed that Motion withdrawn, but gave Plaintiff leave to file an amended complaint. (Doc. 46).

On October 3, 2022, Plaintiff filed an amended complaint. (Doc. 48). In his amended complaint, Plaintiff named as Defendants the same individuals as in his original complaint, but identified the John Does. Plaintiff names as Defendants:

1.    Superintendent Laurel Harry;

2.    Deputy Superintendent for Facilities Management Michael Gourley;

3.    Security Captain Mark Becker;

4.    Lieutenant Matthew Troutman;

5.    Licensed Practical Nurse Stacy Nolan;

6.    Corrections Office ("C.O.") Remy R. Reid;

7.    C.O. Damian Iagovino;

8.    C.O. Robert Donald Roth;

9.    C.O. Derrick A. Zimmerman;

10.   C.O. Jerry Kiner;

11.   Pennsylvania Rape Elimination Act Coordinator David Radziewicz;

12.   Bureau of Investigations and Intelligence Director James Barnacle; and

13.   Bureau of Investigations and Intelligence Lieutenant Beth Evans.

(Doc. 48).

On November 14, 2022, Defendants filed a Partial Motion to Dismiss. (Doc. 53). On November 29, 2022, Defendants filed a brief in support. (Doc. 54). Plaintiff filed a "response" to this Motion on December 7, 2022, (Doc. 55), a brief in opposition on December 16, 2022, (Doc. 57), and a second brief in opposition on January 6, 2023, (Doc. 59). On January 20, 2023, Defendants filed a reply brief. (Doc. 61). On March 2, 2023, Plaintiff filed a "response" to the reply brief. (Doc. 62). The Motion is now ripe and ready for decision.

The underlying facts and Plaintiff's legal claims can be best divided into three categories: 1) a December 24, 2019 assault by corrections officers, 2) withheld meals from December 25 to December 28, 2019, and 3) claims arising from reporting his mistreatment. Plaintiff's alleged assault and subsequent denial of meals occurred at

SCI Camp Hill. We will discuss each in turn, and, for the purposes of deciding this Motion, we will assume the allegations in the amended complaint are true.[1]

### A.   THE DECEMBER 24, 2019 ASSAULT

On December 23, 2019, Plaintiff requested and was placed in protective custody at SCI Camp Hill. (Doc. 48, p. 16). Plaintiff was escorted to a single cell and was not given eating utensils, a drinking cup or toilet paper despite asking for these items. *Id*. The next day, on December 24, 2019, after an interview with psychologists, Plaintiff was walking back to his cell wearing "Security Level Five ("SL5") Restraints," with Defendant Reid walking behind him, holding the restraint leash. *Id*. Defendant Reid then brought Plaintiff "to a small hallway beneath the bubble," where he was met by additional corrections officers. *Id*.

Then the assault began. (Doc. 48, p. 16). Defendant Reid punched Plaintiff in the back and asked him why he was here. *Id*. Plaintiff replied that he was here for a probation violation. *Id*. Defendant Iagovino then kicked Plaintiff's left shin, causing it to bleed and told Plaintiff to "try again." (Doc. 48, p. 17). Defendant Reid then again punched Plaintiff in the back and asked why he was here. *Id*. Plaintiff responded that he had just told Defendant Reid, a technical violation of probation.

---

[1] At the motion to dismiss stage, the Court "must accept all factual allegations in the complaint as true . . . ." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

*Id*. Defendant Reid then again punched Plaintiff while Defendant Iagovino kicked Plaintiff again and asks "your daughters – really?"[2] *Id*.

Defendant Roth then demanded Plaintiff sign himself out of protective custody immediately. (Doc. 48, p. 17). Defendant Roth threatened to kill Plaintiff if he did not do so. Defendant Reid then punched Plaintiff again while Defendant Iagovino asked Plaintiff if he understood and then kicked Plaintiff again. *Id*. Defendant Reid then asked Plaintiff if he understood. *Id*. Plaintiff responded that he did. Defendant Roth then told Plaintiff he would be watching Plaintiff, pointing at his own eyes with two fingers of one hand and then the same at Plaintiff. *Id*. Defendant Reid then punched Plaintiff in the back to return to the cell and escorted Plaintiff from the hallway to the cell, continuing to punch and shove Plaintiff from behind the entire time, calling Plaintiff a "piece of shit" repeatedly. *Id*. Plaintiff's left shin was bleeding in his cell and he was not given lunch. *Id*.

That afternoon, Plaintiff was visited by Defendants Troutman and Nolan in his cell. (Doc. 48, p. 18). Defendant Nolan took four digital photographs of Plaintiff's injuries. *Id*. Defendant Troutman listened to Plaintiff's complaints. *Id*. Plaintiff told Defendant Troutman about the four security cameras covering his transport that morning and that the officers involved were not wearing name tags.

---

[2] Plaintiff "pled guilty in 2003 to committing sexual crimes including rape against his two daughters." *Commonwealth v. Woods*, No. 2450 EDA 2019, 2021 Pa. Super. Unpub. LEXIS 104, at * 1 (Pa. Super. Ct. Jan. 12, 2021).

*Id*. Defendant Troutman told Plaintiff he would file Plaintiff's report and that he did not have immediate access to the security footage but would work on getting it to verify the identities of the officers and the chain of events. (Doc. 48, pp. 18, 24). Defendant Troutman also told Plaintiff there was nothing he could do about Plaintiff missing lunch. (Doc. 48, p. 18).

At some point during Plaintiff's stay in the protective custody unit, Defendant Roth came to Plaintiff's cell again, scowling through the window and again pointing at his eyes with two fingers of one hand and then pointing them at Plaintiff to indicate he was watching Plaintiff. (Doc. 48, p. 18).

### B.   DENIAL OF MEALS FROM DECEMBER 25 TO DECEMBER 28, 2019

On December 25, 2019, Defendant Zimmerman came to Plaintiff's cell to deliver breakfast trays. (Doc. 48, p. 18). Defendant Zimmerman opened the inner wicket door for five seconds and then slammed it shut before Plaintiff could retrieve the tray, telling Plaintiff, "you think you're pretty slick." *Id*. Plaintiff was not given breakfast or lunch that day, only dinner, which he had to eat without eating utensils. *Id*. Plaintiff complained to other block officers but received no response. *Id*.

On December 26, 2019, Defendant Kiner came to Plaintiff's cell to deliver breakfast trays and then lunch trays. (Doc. 48, p. 19). Defendant Kiner made Plaintiff stand in the back of the cell while he opened the inner wicket. *Id*. When Plaintiff

moved towards the door Kiner slammed the wicket shut and told Plaintiff he had "to be quicker than that." *Id*. Plaintiff only ate dinner that day. *Id*.

On December 27, 2019, Defendant Kiner again came to Plaintiff's cell to deliver breakfast trays and then lunch trays. (Doc. 48, p. 19). Defendant Kiner emptied Plaintiff's trays into the trash and then placed the empty tray into the wicket. *Id*.

On December 28, 2019, Defendant Kiner again came to Plaintiff's cell to deliver breakfast trays and then lunch trays. (Doc. 48, p. 19). Defendant Kiner opened the outer wicket door and then quickly closed it, tossing the full trays into the trash and saying Plaintiff "must be on a hunger strike." *Id*.

During this time, Plaintiff was not afforded a shower. (Doc. 48, p. 19). Plaintiff was not given utensils or a drinking cup. *Id*. Plaintiff was given toilet paper during the middle of the week. *Id*.

On December 30, 2019, Plaintiff was moved to the sally port and then transferred to SCI Phoenix. (Doc. 48, p. 19).

### C.   ADMINISTRATIVE GRIEVANCES

Plaintiff made two separate and contemporaneous complaints to prison staff about the assault and denied meals. On the day of his assault, he reported it to Defendant Troutman and Defendant Nolan. (Doc. 48, p. 20). Then, when his meals

Case 4:21-cv-01052-WIA   Document 76   Filed 12/07/23   Page 8 of 56

were being withheld, he complained to other officers and "request[ed] a white shirt. *Id*. No one responded to his complaints or his request for a "white shirt." *Id*.

After he was transferred to SCI Phoenix, on January 6, 2020, Plaintiff mailed a written incident report to the PREA office in Harrisburg.[3] (Doc. 48, p. 20). The report covered all the abuse from December 24 to December 28, 2019.[4] *Id*.

Plaintiff was interviewed by Lt. M. McClain Jr., on February 7, 2020, and wrote a second incident report, signing it himself with McClain adding his signature as a witness. (Doc. 48, p. 20). On March 9, 2020, and April 30, 2020, he wrote to the PREA office to request an update on the investigation. *Id*. He did not receive a response. *Id*.

On May 26, 2020, Defendant Radziewicz acknowledged receipt of Plaintiff's letters and told him that his accusations were not PREA related, stated an investigation was underway, but correspondence was delayed due to the COVID-19 pandemic.[5] (Doc. 48, p. 21; Doc. 48-2). The letter did not inform Plaintiff who was

---

[3] The PREA office Plaintiff refers to is an office within the Pennsylvania Department of Corrections that oversees compliance with the Prison Rape Elimination Act ("PREA"). *See, Prison Rape Elimination Act (PREA)*, PA. DEP'T OF CORR., https://www.cor.pa.gov/Facilities/Prison_Rape_Elimination_Act/ (last visited December 7, 2023).

[4] Plaintiff attaches a copy of his written report to his amended complaint. (Doc. 48-1, pp. 2-3).

[5] Plaintiff attaches Defendant Radziewicz's responses to his Complaint. In his responses, Defendant Radziewicz tells Plaintiff that the PREA office does not investigate assaults, and that other offices handle those investigations. Some of the

conducting the investigation but told Plaintiff the outcome of the investigation would be mailed to him when complete. (Doc. 48, pp. 21, 25; Doc. 48-2). The two men then exchanged more letters over the next six months, with Plaintiff asking for updates on the investigation, and with Defendant Radziewicz telling Plaintiff that he had no updates for him. (Doc. 48, p. 21; Docs. 48-3, 48-4, 48-5).

Plaintiff was interviewed by Lt. M. Wade on February 8, 2021 and wrote a third incident report. (Doc. 48, p. 21). Lt. Wade told Plaintiff that his report would be forwarded to Defendant Evans. *Id*.

On February 10, 2021, Plaintiff received a letter informing him the Department of Corrections ("DOC") Bureau of Investigation and Intelligence ("BII") in Mechanicsburg, Pennsylvania was handling the investigation. (Doc. 48, p. 21; *See* Doc. 48-5).

On February 11, 2021, Plaintiff sent a letter to Defendant Barnacle asking for an update on the investigation. (Doc. 48, p. 21). He received no response. *Id*. On March 24, 2021, Plaintiff wrote to Defendant Evans requesting an update on the investigation but received no response. (Doc. 48, p. 22).

Plaintiff claims that Defendants Radziewicz, Barnacle and Evans "willfully denied [him] any information that would have aided in identifying his assailants.

letters say that BII Director and Security Captain Mark Becker of SCI Camp Hill were cc'ed. (Docs. 48-2, 48-3, 48-4, 48-5).

Defendants deliberately dragged their feet so that video footage from four CCTV cameras would not be available." (Doc. 48, p. 26).

With this background in mind, we now turn to the claims presented in Plaintiff's amended complaint. (Doc. 48).

## III.   THE CLAIMS IN THIS AMENDED COMPLAINT

In the jurisdiction section of his amended complaint Plaintiff states "this is a civil suit authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law and/or violations of federal rights secured by the Constitution of the United States of America." (Doc. 48, p. 8). At the beginning of his amended complaint Plaintiff summarizes his legal claims as:

1.   8th [sic] Amendment

2.   United Nations – Basic Principles

3.   United Nations – Food

4.   1st [sic] Amendment

5.   United Nations – Complaints by Prisoners

6.   18 Pa. C.S.A. § 2710 Pennsylvania Hate Crime

7.   DC-ADM 001 Abuse Allegations

8.   DC-ADM 610 Food

9.   1 Pa. C.S.A. § 2310 Intentional Infliction of Emotional Distress

10.    DC-ADM 201 Use of Force

11.      Abdication of Duty to Supervise and Monitor

(Doc. 48, p. 3).

Several of the § 1983 claims Plaintiff asserts against Defendants involve the
Eighth Amendment. Therefore, for the benefit of the parties, before discussing the
specific claims Plaintiff brings against the various Defendants, the Court will briefly
discuss some of the principles relevant to § 1983 Eighth Amendment claims.

> The Eighth Amendment prohibits the infliction of cruel and unusual
> punishment on prisoners. [*See Wharton v. Danberg*, 854 F.3d 234, 247
> (3d Cir. 2017).]. There are several types of Eighth Amendment claims,
> including claims alleging: denial of, or inadequate access to, medical
> care; exposure to adverse conditions of confinement; the use of
> excessive force; and failure to protect from assaults by other inmates.
> [*Id.*]. An Eighth Amendment claim includes both objective and
> subjective components. [*See Wilson v. Seiter*, 501 U.S. 294, 298
> (1991).]. Under the objective prong, a court must consider "if the
> alleged wrongdoing was objectively 'harmful enough' to establish a
> constitutional violation." [*Hudson v. McMillian*, 503 U.S. 1, 8
> (1992) (quoting *Wilson*, 501 U.S. at 298).]. However, "[w]hat is
> necessary to show sufficient harm for purposes of the Cruel and
> Unusual Punishments Clause depends upon the claim at issue." [*Id.*].
> The subjective component is met if the person or persons causing the
> deprivation acted with "a sufficiently culpable state of mind." [*Wilson*,
> 501 U.S. at 298.].[6]

As the Third Circuit has distilled, "[a]n Eighth Amendment claim against a prison
official must meet two requirements: (1) the deprivation alleged must be,
objectively, sufficiently serious; and (2) the prison official must have a sufficiently

---

[6] *Baez v. Henry*, No. 4:21-CV-00728, 2023 WL 5985266, at *4 (M.D. Pa.
Sept. 14, 2023) (footnote citations inserted).

culpable state of mind."[7] The Supreme Court has held that the applicable state of

mind is dependent upon the type of Eighth Amendment claim being brought.[8]

"Deliberate indifference" is one potentially applicable state of mind.[9] The Third

Circuit has described the deliberate indifference standard:

> A prison official is deliberately indifferent if the official "knows that
> inmates face a substantial risk of serious harm and disregards that risk
> by failing to take reasonable measures to abate it." Chavarriaga, 806
> F.3d at 229 (quotation marks omitted). A plaintiff "may demonstrate
> deliberate indifference by showing that the risk of harm was
> longstanding, pervasive, well-documented, or expressly noted by
> prison officials in the past such that the defendants must have known
> about the risk." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259
> (3d Cir. 2010) (quotation marks omitted). But the plaintiff must show
> that the officials were "aware of facts from which the inference could
> be drawn that a substantial risk of harm exists, and that they also drew
> the inference." Id. (quotation and alteration marks omitted). "It is not
> enough merely to find that a reasonable person would have known, or
> that the defendant should have known...." Farmer v. Brennan, 511 U.S.
> 825, 843 n.8, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).[10]

A plaintiff may also wish to hold a supervisor accountable for constitutional

violations against them. Regarding supervisory liability,

> the mere fact that Defendants were "supervisors" or had supervisory
> authority, standing alone, cannot support liability under § 1983. *Hepler
> v. Wetzel*, No. 18-CV-446, 2019 WL 1923004, at \*5 (W.D. Pa. Apr. 30,
> 2019) (citing *Capone v. Marinelli*, 868 F.2d 102, 106 n.7 (3d Cir.
> 1989)). This is because "[l]iability may not be imposed under § 1983

---

[7] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted).

[8] *Wilson v. Seiter*, 501 U.S. 294, 302 (1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

[9] *Beers-Capitol*, 256 F.3d at 125.

[10] *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016).

on the traditional standards of *respondeat superior.*" *Hepler*, 2019 WL 1923004, at *5. Thus, Defendants cannot be held liable under a *respondeat superior* theory. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

"[T]wo theories of supervisory liability" are available under § 1983 upon a proper factual showing. *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). First, "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.' " *Santiago*, 629 F.3d at 129 n.5 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). "[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015) (citing *Sample v. Diecks*, 885 F.2d 1099, 1114 (3d Cir. 1989) ("Thus, when a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest, the official has 'subjected' that person to a due process violation.")); *see also Berlanti v. Bodman*, 780 F.2d 296, 300-01 (3d Cir. 1985). Under the second theory, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago*, 629 F.3d at 129 n.5 (quoting *A.M.*, 372 F.3d at 586).[11]

With these § 1983 Eighth Amendment principles in mind we will now discuss the claims in Plaintiff's amended complaint.

In the legal claims section of his amended complaint, Plaintiff first provides an introductory paragraph summarizing the conduct applicable to the claims he then

---

[11] *Irizarry v. Kauffman*, No. 4:22-CV-01892, 2023 WL 6147174, at *6 (M.D. Pa. May 15, 2023), *report and recommendation adopted*, No. 4:22-CV-01892, 2023 WL 6143933 (M.D. Pa. Sept. 20, 2023).

lists below. (Doc. 48, pp. 23-30). Next to each claim Plaintiff lists which Defendants he brings that claim against by writing the number he has assigned to represent them. (Doc. 48, pp. 2, 22-30).

Several of Plaintiff's claims are easy to identify. Against Defendants Reid, Iagovino and Roth Plaintiff asserts a claim under the "United Nations Standard Minimum Rules/Treatment of Prisoners Basic Principles." (Doc. 48, p. 23 ¶ 3). Plaintiff asserts a claim under the "United Nations Standard Minimum Rules/Nelson Mandela Rules – Food" against Defendants Zimmerman and Kiner. (Doc. 48, p. 24 ¶ 6). Against Defendants Radziewicz, Barnacle and Evans Plaintiff asserts a claim under the "United Nations Standard Minimum Rules/Nelson Mandela Rules Information to and Complaints by Prisoners." (Doc. 48, p. 26 ¶ 12).

Some of Plaintiff's claims, however, require the Court to better define them. Against Defendants Reid, Iagovino, Roth, Zimmerman and Kiner Plaintiff purports to assert a state law claim under Pennsylvania's "Hate Crime Law," 18 Pa. C.S.A. § 2710, (Doc. 48, p. 27 ¶ 14). Plaintiff writes:

> 18 Pa. C.S.A. § 2710 Hate Crime Law [Def 7-11]
> A person who incurs injury to his person as a result of conduct described in 18 Pa. C.S.A. § 2710 (relating to intimidation/malicious intention) shall have a right of action against the actor(s) for injunction, damages or other appropriate civil or equitable relief.

(Doc. 48, p. 27).

However, 18 Pa. C.S. § 2710 is a section of Pennsylvania's Crimes Code,

specifically Pennsylvania's Ethnic intimidation statute, and reads:

> (a) Offense defined.--A person commits the offense of ethnic
> intimidation if, with malicious intention toward the race, color, religion
> or national origin of another individual or group of individuals, he
> commits an offense under any other provision of this article or under
> Chapter 33 (relating to arson, criminal mischief and other property
> destruction) exclusive of section 3307 (relating to institutional
> vandalism) or under section 3503 (relating to criminal trespass) with
> respect to such individual or his or her property or with respect to one
> or more members of such group or to their property.
>
> (b) Grading.--An offense under this section shall be classified as a
> misdemeanor of the third degree if the other offense is classified as a
> summary offense. Otherwise, an offense under this section shall be
> classified one degree higher in the classification specified in section
> 106 (relating to classes of offenses) than the classification of the other
> offense.
>
> (c) Definition.--As used in this section "malicious intention" means the
> intention to commit any act, the commission of which is a necessary
> element of any offense referred to in subsection (a) motivated by hatred
> toward the race, color, religion or national origin of another individual
> or group of individuals.

This clearly does not match the language Plaintiff uses in his amended complaint.

Plaintiff appears to be quoting 42 Pa. C.S. § 8309(a), which provides in pertinent

part:

> (a) Redress for personal injury.--A person who incurs injury to his
> person or damage or loss to his property as a result of conduct described
> in 18 Pa.C.S. § 2710 (relating to ethnic intimidation) or 3307 (relating
> to institutional vandalism) shall have a right of action against the actor
> for injunction, damages or other appropriate civil or equitable relief.

A *pro se* complaint is entitled to a liberal construction.[12] Thus, given the Court's duty to liberally construe Plaintiff's amended complaint, the Court will interpret Plaintiff's amended complaint as asserting a claim under 42 Pa. C.S. § 8309(a).[13]

Plaintiff also attempts to assert claims for Intentional Infliction of Emotional Distress ("IIED") against Defendants Reid, Iagovino, Roth, Zimmerman and Kiner. (Doc. 48, p. 28 ¶ 14).[14] Plaintiff labels the claim as "1 Pa. C.S.A. § 2310 Intentional Infliction of Emotional Distress (IIED)." *Id*. Plaintiff then recites what appears to be a standard for outrageousness in the context of IIED claims. *Id*. Plaintiff references 1 Pa. C.S. § 2310 as the "emotional distress statute." (Doc. 57, p. 8). However, 1 Pa. C.S. § 2310 is titled Sovereign immunity reaffirmed; specific waiver, and reads:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General

---

[12] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[13] To the extent Plaintiff wishes to bring this claim under 42 U.S.C. § 1983 those claims would fail as any rights that section may imbue Plaintiff with would be state's rights and not federal rights. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (citing *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)). Therefore the Court interprets this claim as state law claims. Further, even if Plaintiff was trying to assert claims under 18 Pa. C.S.§ 2710 such claims would fail as the Pennsylvania Crimes Code does not provide a private right of action. *See Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020).

[14] Again, to the extent Plaintiff wishes to bring these claims under 42 U.S.C. § 1983 this claim would fail as an IIED claim does not involve a federal right. *Woloszyn*, 396 F.3d at 319. Therefore the Court interprets this claims as state law claim.

Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.[15]

Given that this section does not relate to an IIED claim, the Court interprets Plaintiff's citation to it as alleging Defendants are not entitled to sovereign immunity. This is supported by Plaintiff's allegation in the same paragraph that "the officers were not operating within the scope of their employment." (Doc. 48, p. 28 ¶ 14).

Plaintiff asserts a § 1983 claim[16] for the violation of  DOC Policy Number DC-ADM 001, Inmate Abuse ("DC-ADM 001") and a violation of DOC Policy Number DC-ADM 201, Use of Force ("DC-ADM 201") against Defendants Reid, Iagovino and Roth. (Doc. 48, pp. 27-28 ¶ 14). Against Defendants Zimmerman and Kiner, Plaintiff asserts a claim for the violation of DOC Policy Number DC-ADM 610, Food Services ("DC-ADM 610). (Doc. 48, p. 28 ¶ 14).

Plaintiff's other 42 U.S.C. § 1983 claims require more specification. While a *pro se* complaint is entitled to a liberal construction,[17] when deciding a motion to

---

[15] 1 Pa. C.S. § 8309(a).

[16] The parties frame these claims as being brought pursuant to § 1983 in their briefs to this Motion. (Doc. 54, p. 6; Doc. 59, p. 4; Doc. 61, p. 7). This comports with Plaintiff's assertion this lawsuit is brought under § 1983. (Doc. 48, p. 8).

[17] *Erickson*, 551 U.S. at 94.

dismiss, courts are not required to credit legal conclusions and bald assertions.[18] Thus, the Court interprets the remainder of Plaintiff's § 1983 claims as follows.

In the first paragraph asserting his claims, Plaintiff begins with a summary that he was in SL5 restraints on December 24, 2019 and was subjected to physical and psychological abuse and threats to his life. (Doc. 48, p. 23 ¶ 3). Plaintiff then writes:

> 8th Amendment – Deliberate Indifference [Def 5 thru 9]
> – Poor/Inhumane Living Conditions [Def 7 thru 9]
> – Retaliation [Def 7 thru 9]

(Doc. 48, p. 23) (all errors in original). While Plaintiff purports to bring a claim for retaliation under the Eighth Amendment, that claim is properly brought under the First Amendment. *Id*. The Court will thus construe Plaintiff as bringing a § 1983 First Amendment Retaliation claim against Defendants Reid, Iagovino and Roth. *Id*. As to Plaintiff's claims for 'Deliberate Indifference' and 'Poor/Inhumane Living Conditions' under the Eighth Amendment, based on the facts pleaded in Plaintiff's amended complaint and in particular the summary he gives before listing out these claims, the Court interprets this as Plaintiff asserting a § 1983 Eighth Amendment Excessive Force claim against Defendants Reid, Iagovino and Roth. Plaintiff also attempts to plead a claim for 'Deliberate Indifference' against Defendants Troutman

---

[18] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

and Nolan. (Doc. 48, p. 23). As to Defendant Nolan, the Court interprets Plaintiff's amended complaint as asserting a § 1983 Eighth Amendment medical care claim against her. As to Defendant Troutman, when Plaintiff lists Defendant Troutman in the parties section of his amended complaint he gives Defendant Troutman's title and a short description of his duties before writing "Abdicating their Duty to Supervise et al." (Doc. 48, pp. 12, 23). This language matches the language Plaintiff uses when asserting claims against other Defendants later in his amended complaint, and so the Court will interpret Plaintiff as bringing the same failure to supervise claim he does against those Defendants against Defendant Troutman. (Doc. 48, pp. 12, 23).

In the second paragraph asserting his legal claims, Plaintiff begins with a summary that he was denied a total of nine meals, showers, eating utensils and a drinking cup, with toilet paper being issued during the middle of the week despite making numerous requests for relief. (Doc. 48, p. 24 ¶ 6). Plaintiff then writes:

> 8th Amendment – Deliberate Indifference [Def 10 and 11]
>            – Poor/Inhumane Living Conditions [Def 10 and 11]
>            – Retaliation [Def 10 and 11]

(Doc. 48, p. 24) (all errors in original).  While Plaintiff once again purports to bring a claim for retaliation under the Eighth Amendment, that claim is properly brought under the First Amendment. *Id*. The Court will thus construe Plaintiff as bringing a § 1983 First Amendment Retaliation claim against Defendants Zimmerman and

Kiner. *Id*. As to Plaintiff's claims for 'Deliberate Indifference' and 'Poor/Inhumane Living Conditions' under the Eighth Amendment, based on the facts pleaded in Plaintiff's amended complaint and in particular the summary he gives before listing out these claims, the Court interprets this as Plaintiff asserting a § 1983 Eighth Amendment Conditions of Confinement claim against Defendants Zimmerman and Kiner. *Id*.

In the third paragraph asserting his legal claims, Plaintiff begins with a summary that he was willfully denied information that would have aided in identifying his assailants and that the listed Defendants deliberately dragged their feet so the video footage of the assault would be unavailable. (Doc. 48, p. 26 ¶ 12). Plaintiff then writes:

> 1st Amendment – Right to Petition Government to Redress Grievance
> [Def 12, 13, 14]
>
> 8th Amendment – Deliberate Indifference [Def 12, 13, 14]

(Doc. 48, p. 26 ¶ 12). Based on the facts pleaded in Plaintiff's amended complaint and in particular the summary he gives before listing out these claims, the Court interprets this as Plaintiff bringing a § 1983 failure to investigate claim against Defendants Radziewicz, Barnacle and Evans. *Id*.

In the fifth paragraph asserting his legal claims, Plaintiff begins by asserting that the Defendants listed are "charged with abdicating their duty to supervise and monitor the use of force and deliberately permitting a pattern of excessive force to

develop and persist." (Doc. 48, p. 29 ¶ 16) (internal quotation marks omitted).

Plaintiff then writes:

8th Amendment – Deliberate Indifference . . . [Def 2, 3, 4]

(Doc. 48, p. 29 ¶ 16). Based on the facts pleaded in Plaintiff's amended complaint

and in particular the summary he gives before listing out these claims, the Court

interprets this as Plaintiff bringing a § 1983 Eighth Amendment failure to supervise

claim against Defendants Harry, Gourley and Becker. *Id*. As discussed above, when

listing Defendant Troutman in the parties section of his amended complaint, Plaintiff

uses this same language and so the Court interprets Plaintiff's amended complaint

as asserting this § 1983 Eighth Amendment failure to supervise claim against

Defendant Troutman as well. (Doc. 48, p. 12).

Plaintiff also indicates that he brings his § 1983 claims against all Defendants

in their official capacities. (Doc. 48, p. 7).

In sum, the Court construes Plaintiff's amended complaint as stating the

following claims:

1.   A 42 U.S.C. § 1983  Eighth Amendment Excessive Force claim against
     Defendants Reid, Iagovino and Roth in their individual and official
     capacities. (Doc. 48, p. 23 ¶ 3).

2.   A 42 U.S.C. § 1983   First Amendment Retaliation claim against
     Defendants Reid, Iagovino and Roth in their individual and official
     capacities. (Doc. 48, p. 23 ¶ 3).

3.   A claim under the "United Nations Standard Minimum Rules/Treatment of Prisoners Basic Principles" against Defendants Reid, Iagovino and Roth. (Doc. 48, p.23 ¶ 3).

4.   A 42 U.S.C. § 1983 Eighth Amendment medical care claim against Defendant Nolan in her individual and official capacities. (Doc. 48, p. 23 ¶ 3).

5.   A 42 U.S.C. § 1983 Eighth Amendment Conditions of Confinement claim against Defendants Zimmerman and Kiner in their individual and official capacities. (Doc. 48, p.24 ¶ 6).

6.   A 42 U.S.C. § 1983 First Amendment Retaliation claim against Defendants Zimmerman and Kiner in their individual and official capacities. (Doc. 48, p.24 ¶ 6).

7.   A claim under the "United Nations Standard Minimum Rules/Nelson Mandela Rules – Food" against Defendants Zimmerman and Kiner. (Doc. 48, p. 24 ¶ 6).

8.   A 42 U.SC. § 1983 claim against Defendants Radziewicz, Barnacle and Evans for failure to investigate in their individual and official capacities. (Doc. 48, p. 26 ¶ 12).

9.   A claim under the "United Nations Standard Minimum Rules/Nelson Mandela Rules Information to and Complaints by Prisoners" against Defendants Radziewicz, Barnacle and Evans. (Doc. 48, p. 26 ¶ 12).

10.  A claim under 42 Pa. C.S. § 8309(a) against Defendants Reid, Iagovino, Roth, Zimmerman and Kiner. (Doc. 48, p. 27 ¶ 14).

11.  A 42 U.S.C. § 1983 claim for the violation of  DC-ADM 001 against Defendants Reid, Iagovino and Roth in their individual and official capacities. (Doc. 48, p. 27 ¶ 14).

12.  A 42 U.S.C. § 1983 claim for the violation of DC-ADM 610 against Defendants Zimmerman and Kiner in their individual and official capacities. (Doc. 48, p. 28 ¶ 14).

13.   A claim for Intentional Infliction of Emotional Distress against
Defendants Reid, Iagovino, Roth, Zimmerman and Kiner. (Doc. 48, p.
28 ¶ 14).

14.   A 42 U.S.C. § 1983 claim for the violation of DC-ADM 201 against
Defendants Reid, Iagovino and Roth. (Doc. 48, pp. 27-28). (Doc. 48, p.
28 ¶ 14) in their individual and official capacities.

15.   A 42 U.S.C. § 1983 Eighth Amendment failure to supervise claim
against Defendants Harry, Gourley, Becker and Troutman in their
individual and official capacities. (Doc. 48, p. 12; p. 23 ¶ 12; p. 29 ¶
16).

As relief, Plaintiff requests compensatory damages in the amount of $100,000
against each Defendant "jointly and separately;" punitive damages in the amount of
$20,000 against each Defendant "jointly and separately;" and his expenses in this
lawsuit. (Doc. 48, p. 30).

We will now turn to an explanation of the legal standards applicable to this
case.

## IV.   LEGAL STANDARDS

Before proceeding to the merits of Defendants' motion, it is helpful to restate
the legal standards relevant to motions to dismiss under Rule 12(b)(6) of the Federal
Rules of Civil Procedure. We will also discuss 42 U.S.C. § 1983 civil rights claims.

### A.   MOTIONS TO DISMISS UNDER RULE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant
to seek dismissal for failure to state a claim upon which relief can be granted. "The

defendant bears the burden of showing that no claim has been presented."[19] To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6), a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth;  and (3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[20]

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[21] To state a claim, a plaintiff must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."[22] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[23] Thus, courts "need not credit a claimant's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[24] The court also need not assume

---

[19] *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).

[20] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[22] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (internal quotation marks omitted)).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[24] *Morse*, 132 F.3d at 906 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429-30).

that a plaintiff can prove facts that he or she has not alleged.[25] "To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."[26]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[28] This "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"[29] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[30]

Again, a complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal

---

[25] *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[26] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 1949).

[27] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[28] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[29] *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).

[30] *Id.* at 347.

pleadings drafted by lawyers.'"[31] Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim."[32]

In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.[33] Further, it is well settled that a Plaintiff cannot amend a complaint in a brief opposing a motion to dismiss.[34]

### B.    42 U.S.C. § 1983 CLAIMS GENERALLY (VIOLATION OF CIVIL RIGHTS)

Generally, there are two fundamental requirements for every § 1983 claim. To bring a claim under § 1983, a plaintiff must allege facts that show: 1) a deprivation of a federally protected right, and 2) that this deprivation was committed by a person acting under color of state law.[35]

A plaintiff must plead personal involvement of each individual defendant as "individual liability can be imposed only if the state actor played an 'affirmative part' in the alleged misconduct, either through personal direction of or actual

---

[31] *Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106).

[32] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

[33] *Mayer*, 605 F.3d at 230.

[34] *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 720 (M.D. Pa. 2013), *Davis v. Portfolio Recovery Associates, LLC.*, No. CV 21-166, 2022 WL 138046, at *4 (W.D. Pa. Jan. 14, 2022).

[35] *Woloszyn*, 396 F.3d at 319 (citing *Lake*, 112 F.3d at 689).

knowledge and acquiescence in the deprivation."[36] It is not enough to state "a mere hypothesis that an individual defendant had personal knowledge of or involvement in depriving the plaintiff of his rights," as that "is insufficient to establish personal involvement."[37]

Additionally, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[38]

## V.   ANALYSIS

In their motion to dismiss, Defendants assert seven arguments:

1.   All official capacity claims should be dismissed as a matter of law. (Doc. 54, pp. 4-5).

2.   The claims against Defendants Harry, Gourley, and Becker should be dismissed because they cannot rest upon a theory of *respondeat superior*. (Doc. 54, pp. 5-6).

3.   The Eighth Amended deliberate indifference claims against Defendants Troutman and Nolan should be dismissed. (Doc. 54, p. 6).

4.   Allegedly failing to investigate a PREA complaint is not a cognizable legal claim. (Doc. 54, p. 6).

5.   Allegedly violating prison policies is not a cognizable legal claim. (Doc. 54, pp. 6-7).

---

[36] *Gannaway v. PrimeCare Med., Inc.*, 150 F. Supp. 3d 511, 526 (E.D. Pa. 2015) (citing *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir.1986), *aff'd sub nom, Gannaway v. PrimeCare Med., Inc*., 652 F. App'x 91 (3d Cir. 2016)).

[37] *Id*. at 526-27.

[38] *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 n.55 (1978)) (internal quotation marks omitted)).

6.     The state law theories of liability fail as a matter of law. (Doc. 54, pp. 7-8).

7.     United Nations' treaties are not self-executing and do not create judicially enforceable rights. (Doc. 54, p. 8).

The Court will address each of these issues below.

The Court also notes that Plaintiff has filed two briefs in opposition to this case (Docs. 57, 59) and what is effectively a sur reply brief (Doc. 61). Since Defendants replied to both of Plaintiff's briefs in opposition, the Court will consider both. The Court will also consider Plaintiff's sur reply brief even though he was not granted leave to file one.

In his briefs in opposition and sur reply brief, Plaintiff states numerous new facts in support of his claims. (Docs. 57, 59, 62). The Court cannot consider the new facts Plaintiff alleges in his briefs in opposition and sur reply brief. It is well settled that a Plaintiff cannot amend a complaint in a brief opposing a motion to dismiss.[39] The Court therefore cannot and will not consider Plaintiff's new factual allegations in analyzing this partial motion to dismiss.[40]

---

[39] *Commonwealth of Pa. ex rel. Zimmerman*, 836 F.2d 173, 181 (3d Cir. 1988); *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 720 (M.D. Pa. 2013); *Davis v. Portfolio Recovery Associates, LLC.*, No. CV 21-166, 2022 WL 138046, at *4 (W.D. Pa. Jan. 14, 2022).

[40] *Rojas v. Garland*, No. CV 23-3215, 2023 WL 5751407, at *3 n.3 (E.D. Pa. Sept. 6, 2023); *Fudge v. Marsh*, No. 3:20-CV-02112, 2022 WL 509329, at *4 (M.D. Pa. Feb. 18, 2022).

Plaintiff also attaches several documents to his first brief in opposition and sur reply brief. (Doc. 57-1, pp. 1-10). These documents include an investigation report (Doc. 57-1, pp. 2-5) and written staff statements on the incident (Doc. 57-1, pp. 5-10). To his sur reply brief, Plaintiff attaches two articles about cases dealing with qualified immunity.[41] (Doc. 62-1, p. 2; Doc. 62-2, p. 2). The Court will not consider any of these attachments.[42] Again, in deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.[43] It is not clear any of these documents fall into one of these categories, nor does Plaintiff assert they do.

We now turn to our analysis of Defendants' partial motion to dismiss.

### A. PLAINTIFF FAILS TO STATE ANY 42 U.S.C. § 1983 CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY

Plaintiff asserts all of his 42 U.S.C. § 1983 claims against Defendants in their official and individual capacities. Plaintiff's official capacity 42 U.S.C. § 1983 claims will be dismissed.

---

[41] Also attached to Plaintiff's sur reply brief are two documents, one titled "Plaintiff's request for additional video footage," and one titled "Plaintiff's request for code of ethics." (Doc. 62-2, pp. 3-13). The Court believes these documents were erroneously attached to Plaintiff's sur reply brief and that Plaintiff intended for each of these documents to be separately filed as discovery requests.

[42] Even if the Court were to consider these attachments they would not change the end result in this case.

[43] *Mayer*, 605 F.3d at 230.

Again, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[44] "Suits against state officials in their official capacity therefore should be treated as suits against the State."[45] In asserting his claims against Defendants in their official capacities, Plaintiff is effectively suing the Commonwealth of Pennsylvania.

Defendants assert 42 U.S.C. § 1983 claims against the Commonwealth of Pennsylvania are barred by Eleventh Amendment immunity. In response, Plaintiff argues that a "prison official can be liable for policies or conditions that are dangerous to all prisoners or to an identifiable group of prisoners." (Doc. 59, p. 2). Plaintiff also seems to assert that municipalities can be found liable under § 1983 in certain circumstances. (Doc. 57, p. 2). Plaintiff asserts that "Eleventh Amendment immunity is inapplicable where the plaintiff sues state officials in their official capacities seeking only prospective injunctive relief." (Doc. 62, p. 2).

Plaintiff's arguments are misplaced. While Plaintiff is correct that municipalities can be found liable under § 1983 in certain circumstances, Plaintiff is not suing a municipality or municipal official. Plaintiff is also correct that when a plaintiff seeks injunctive relief against state officials in their official capacity, the

---

[44] *Hafer*, 502 U.S. at 25 (quoting *Graham,* 473 U.S. at 165 (quoting *Monell*, 436 U.S. at 690 n.55) (internal quotation marks omitted)).

[45] *Hafer*, 502 U.S. at 25 (citing *Graham*, 473 U.S. at 166).

state officials are persons under § 1983.[46] However, Plaintiff does not seek injunctive relief in his prayer for relief.

Defendants are correct in their assertion that Plaintiff's official capacity 42 U.S.C. § 1983 claims are barred by Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . ."[47] By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state. "The Supreme Court extended the Eleventh Amendment's reach to suits by *in-state* plaintiffs, thus barring all private suits against non-consenting States in federal courts."[48]

Eleventh Amendment protection, however, is not absolute. A state or state agency's sovereign immunity under the Eleventh Amendment may be relinquished through (1) waiver by a state's consent to suit against it in federal court and (2) the abrogation of such immunity by an act of Congress.[49] However, neither of these exceptions are applicable in this case. The Commonwealth of Pennsylvania has not

---

[46] *See Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *3 n.15 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).

[47] U.S. Const. amend. XI.

[48] *Lombardo v. Pennsylvania Dept. of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008).

[49] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

waived its Eleventh Amendment immunity by consenting to suit in federal court.[50]

Nor has Congress abrogated States' immunity under 42 U.S.C. § 1983.[51]

Plaintiff's official capacity civil rights claims are brought pursuant to 42 U.S.C. § 1983. Therefore, Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. Plaintiff's official capacity § 1983 claims will therefore be dismissed with prejudice as any amendment would be futile.

### B.   PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 EIGHTH AMENDMENT FAILURE TO SUPERVISE CLAIM

In his amended complaint, Plaintiff asserts a § 1983 Eighth Amendment failure to supervise claim, against Defendants Harry, Gourley, Becker, and Troutman, "charging" them "with abdicating their duty to supervise and monitor the use of force and deliberately permitting a pattern of excessive force to develop and

---

[50] 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States); 1 Pa. C.S. § 2310 ("the Commonwealth . . . shall continue to enjoy sovereign immunity and remain immune from suit . . . ."); *see also Slavish v. City of Wilkes-Barre*, No. 3:17-CV-1468, 2018 WL 5289500, at *9-10 (M.D. Pa. June 14, 2018) ("Although the Commonwealth has expressly waived its sovereign immunity from suit in state court in nine specific areas, it has not waived its immunity from being sued in federal court for any reason.").

[51] *Phillips v. James*, No. 13-1196, 2014 WL 1652914, at *8 (W.D. Pa. Apr. 23, 2014) ("Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages . . . .").

persist." (Doc. 48, pp. 12, 28) (quoting *Madrid v. Gomez*, 889 F. Supp. 1146, 1249 (N.D. Cal. 1995)).

Defendants Harry, Gourley, Becker and Troutman assert that Plaintiff's claims against them cannot rest upon a theory of *respondeat superior*. (Doc. 54, p. 5). These Defendants then interpret Plaintiff's claim against them as "failure to control" claims. (Doc. 54, pp. 5-6). Defendants Harry, Gourley, Becker and Troutman then assert Plaintiff has failed to adequately state such claims because he has not plead any facts suggesting these Defendants "either (1) knew contemporaneously of the subordinate's offending behavior or knew of a prior pattern of similar incidents or circumstances and, (2) acted in a manner that reasonably could be found to communicate a message of approval to the subordinate." (Doc. 54, p. 5).

Plaintiff responds by arguing that under § 1983, municipalities can be found liable for failure to train or supervise. (Doc. 57, p. 2). Plaintiff alleges that "just as a lack of training and supervision of municipal police officers . . . can lead directly to unjustified and unnecessary injuries, the same is true for guards in state prisons."[52]

---

[52] Later in this brief in opposition, Plaintiff cites case law supporting excessive force claims, arguing "Defendants have demonstrated sufficient culpability to incur liability under the 8th [sic] Amendment. (Doc. 57, p. 7). It is unclear if Plaintiff is trying to use this argument to support the 'failure to control' and failure to supervise claims. To the extent he is, those cases go to liability for excessive force. Defendants Reid, Iagovino and Roth are not challenging Plaintiff's § 1983 Eighth Amendment Excessive Force claim.

(Doc. 57, p. 3). Plaintiff "avers" that prison administrators at SCI Camp Hill are indifferent to "brutal behavior by guards" which is sufficient to state an Eighth Amendment Claim. (Doc. 57, p. 2). Plaintiff argues that his claims against Defendants Harry, Gourley and Becker are grounded in a supervisory liability theory and asserts that supervisory liability is not premised on a theory of *respondeat superior.* Plaintiff then "avers" that a pattern of abuse exists at SCI Camp Hill, citing numerous cases in support, and asking how supervisory personnel could not be aware of this pattern. (Doc. 59, pp. 2-3).

Replying to Plaintiff's briefs in opposition, Defendants Harry, Gourley and Becker argue that Plaintiff attempts to add facts to support his claims, which he is not permitted to do in his briefs, and that in any event, Plaintiff still has failed to state claims against Defendants Harry, Gourley and Becker. (Doc. 61, pp. 4-5). Defendants argue that "even if the court [sic] gave the list of identified civil cases weight in its analysis to dismiss the supervisory claims," Plaintiff has not alleged sufficient facts that Defendants Harry, Gourley and Becker were aware of the pattern identified by Plaintiff and that these Defendants acted in such a way that could reasonably be found to communicate a message of approval to their subordinates. (Doc. 61, p. 5). Defendants "respectfully assert that . . . to the extent that supervisory claims are being asserted against Defendants Harry, Gourley, Becker and Troutman, such should be dismissed." *Id*.

The Court believes Plaintiff is asserting a § 1983 Eighth Amendment failure to supervise claim against Defendants Harry, Gourley, Becker and Troutman and not a 'failure to control' claim. Plaintiff specifically "charges" these Defendants with "*abdicating their duty to supervise*." (Doc. 48, pp. 11-12, 29) (emphasis added). Defendants Harry, Gourley, Becker and Troutman seem to acknowledge this too as they reference the Court performing analysis on dismissal of "the supervisory claims," and assert "to the extent that supervisory claims" are being asserted against them those claims should be dismissed.[53]  (Doc. 61, p. 5).

As explained recently by Chief Judge Matthew W. Brann for the Middle District of Pennsylvania, liability for failure to supervise is "only available in Section 1983 actions where a supervisor, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," with deliberate indifference to the consequences, "or participated in violating plaintiff's rights, directed others to

---

[53] Defendants Harry, Gourley, Becker and Troutman construe Plaintiff's claim against them as a failure to control claim. The Court notes that the single case, (Doc. 54, p. 5), Defendants Harry, Gourley, Becker and Troutman point the Court to, *Montgomery v. De Simone*, saw the Third Circuit explain, "[w]e have held that a failure to train, discipline or control can only form the basis for **section 1983 municipal liability** if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (emphasis added). Defendants Harry, Gourley, Becker and Troutman fail to go on and explain how this standard for municipal liability is applicable to Plaintiff's claim against individuals.

violate them or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinate's violations."[54]

Defendants Harry, Gourley, Becker and Troutman's arguments that Plaintiff has failed to state a failure to supervise claim are just enough to meet their "burden of showing no claim has been presented." (Doc. 54, p. 5; Doc. 61, p. 4).

In his amended complaint, Defendants Harry, Gourley, Becker and Troutman are mentioned

(1)    in each list of defendants or caption (Doc. 48, pp. 2, 4, 7);

(2)    as part of all the Defendants Plaintiff concludes violated his rights on state, federal and international levels (Doc. 48, p. 1);

(3)    in the parties section where Plaintiff provides their job titles and, limitedly, their duties, noting that Defendant Harry "is and was at all times mentioned herein the Superintendent for SCI Camp Hill. She is solely responsible for the operation of the facility and the custody and welfare of all inmates housed there;" that Defendant Gourley "is and was at all times mentioned herein the Deputy Superintendent for facilities management at SCI Camp Hill. He is responsible for unit management and for facility security and safety;" that Defendant Becker "is and was at all times mentioned herein the Security Captain for SCI Camp Hill. He is responsible for all issues of security involving inmates at the facility;" and that Defendant Troutman "is and was at all times mentioned herein a staff member at SCI Camp Hill. His various duties include supervision of the restricted housing unit (RHU) use for a PCU." (Doc. 48, pp. 11-12); and

(4)    in the legal claims section where he charges these Defendants with abdicating their duty to supervise and provides quotations from various cases (Doc. 48, p. 29).

---

[54] *Baez v. Henry*, No. 4:21-CV-00728, 2023 WL 5985266, at *7 (M.D. Pa. Sept. 14, 2023) (citing *A.M. ex rel. JMK v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (internal quotation marks omitted).

Plaintiff also alleges that on the afternoon of December 24, 2019, after the assault, Defendant Troutman came to his cell. (Doc. 48, p. 18). At that time, Defendant Troutman listened to Plaintiff's complaints and reported the abuse and threats. (Doc. 48, pp. 18, 20, 24). Defendant Troutman told Plaintiff he did not have access to the security camera footage immediately but that he would work on obtaining it, would submit Plaintiff's report and could not do anything about Plaintiff missing lunch. (Doc. 48, pp. 18, 20, 24).

Defendants Harry, Gourley, Becker and Troutman are thus correct in their assertion that Plaintiff does not adequately plead that they were directly involved in their subordinates behavior, that they knew of the offending behavior or a prior pattern of similar behavior or that they acted in a manner that could be reasonably interpreted as sending a message of approval to their subordinates.[55] (Doc. 54, p. 5; Doc. 61, pp. 5-6).

Defendants Harry, Gourley, Becker and Troutman directly assert that Plaintiff does not plead sufficient facts in his amended complaint to support that they had "knowledge of" their subordinates actions and conveyed a message of approval of their

---

[55] While Plaintiff "charge[s]" Defendants Harry, Gourley, Becker and Troutman with not "monitor[ing] the use of force and "deliberately permitting a pattern of excessive force to develop and persist," (Doc. 48, p. 29) (quoting *Madrid*, 889 F. Supp. at 1249) this 'charge' is conclusory and close to a "formulaic recitation of the elements of" Plaintiff's asserted cause of action. *Twombly*, 550 U.S. at 555. This 'charge' is not factual support for Plaintiff's failure to supervise claim.

subordinates actions and that they "participate[d] in violating plaintiff's rights."[56] (Doc. 54, p. 5; Doc. 61, pp. 5-6). The Court agrees. As described above, Plaintiff pleads limited information about these Defendants. Without knowledge of a prior pattern of similar incidents or circumstances as these Defendants suggest, it is uncertain how "such [D]efendants, with deliberate indifference, to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."[57] Without knowledge of their subordinates actions, it is unclear how Defendants Harry, Gourley, Becker and Troutman could have "directed others to violate them or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinate's violations."[58]

Merely listing Defendants Harry, Gourley and Becker as Defendants in this case, providing their job titles and duties, and then concluding they are liable for a § 1983 failure to supervise claim against Plaintiff is not enough to state a claim. Outside of that basic information, Plaintiff pleads nothing relating to Defendants Harry, Gourley and Becker in his amended complaint. The additional information that Defendant Troutman came to take Plaintiff's report after the alleged assault does not save Plaintiff's claim against him. (Doc. 48, pp. 18, 20, 24). These additional facts about

---

[56] *Baez*, 2023 WL 5985266, at *7 (citing *A.M. ex rel. JMK*, 372 F.3d at 586.

[57] *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)) (internal quotation marks omitted).

[58] *Id*. (citing *Stoneking*, 882 F.2d at 725) (internal quotation marks omitted).

Defendant Troutman's action do not supply the necessary support for a failure to supervise claim. Thus, in his amended complaint,[59] Plaintiff does not plead sufficient facts for the Court to reasonably expect "discovery will reveal the necessary elements" of either theory of liability for failure to supervise.[60]

Therefore, Plaintiff fails to state a § 1983 Eighth Amendment failure to supervise claim against Defendants Harry, Gourley, Becker and Troutman and the failure to supervise claim will be dismissed without prejudice. As this is the only claim Plaintiff brings against Defendants Harry, Gourley, Becker and Troutman, they will be dismissed from this case.

### C.   PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 EIGHTH AMENDMENT MEDICAL CARE CLAIM

In the legal section of his amended complaint, Plaintiff pleads an "8th [sic] Amendment – Deliberate Indifference" claim against Defendant Nolan. (Doc. 48, p. 23). As explained, it is not clear what Plaintiff means by this and so using the description under which Plaintiff's claim against Defendant Nolan falls, the Court has construed it as a § 1983 Eighth Amendment medical claim.

---

[59] While Plaintiff alleges new facts in his briefs in opposition, Defendants Harry, Gourley, Becker and Troutman are correct in their assertion that Plaintiff cannot supplement his amended complaint with facts not alleged in that amended complaint and as such the Court will not consider those facts. *Commonwealth of Pa. ex rel. Zimmerman*, 836 F.2d at 181.

[60] *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

As for this claim,

> In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."

> A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[61]

Further, when the adequacy of the treatment actually provided is at issue, "the key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires."[62]

Defendant Nolan argues that Plaintiff does not plead facts supporting her first-hand knowledge of the alleged assault or that she was deliberately indifferent. (Doc. 54, p. 6). Defendant Nolan seems to argue that Plaintiff only alleges in his amended

---

[61] *Cooper v. Ardery*, No. 4:22-CV-01392, 2023 WL 5833241, at *5-6 (M.D. Pa. Sept. 8, 2023) (quoting in order, *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Monmouth Cnty Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Monmouth Cnty Corr.*, 834 F.2d at 347; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

[62] *Cooper*, 2023 WL 5833241, at *6 (citing *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (3d Cir. 1988)).

complaint that she arrived after the alleged assault to examine him and take four photographs of his injuries. (Doc. 54, p. 6; Doc. 61, p. 6).

After listing nine excessive force cases by inmates at SCI Camp Hill, Plaintiff then states that Defendant Nolan "did a superficial examination and brought no medical supplies," and that "there was no follow-up by medical personnel." (Doc. 59, p. 3) (emphasis in original). Again, however, these new facts alleged in his brief in opposition cannot supplement Plaintiff's amended complaint and as such the Court will not consider those facts.[63]

In the parties section of his amended complaint, Plaintiff states that Defendant Nolan "is and was at all times mentioned herein a staff member of the medical department at SCI Camp Hill. She was on call at the RHU during the time in question." (Doc. 48, p. 12). Plaintiff then writes, "injury didn't [sic] appear to be consistent with that which would be sustained from kicking 03.23.20 16:45 Lt. Francis." *Id*. From his amended complaint it is unclear precisely what this means. The Court will interpret this as an allegation that Defendant Nolan at some point said or wrote this to Lieutenant Francis. Plaintiff's amended complaint also alleges that after the assault on December 24, 2019, Defendant Nolan visited and interviewed Plaintiff in his cell and took four digital photographs of his injuries. (Doc. 48, pp. 18, 20, 24). This is all Plaintiff pleads about Defendant Nolan in his amended

---

[63] *Commonwealth of Pa. ex rel. Zimmerman*, 836 F.2d at 181.

complaint.[64] This is insufficient to state a § 1983 Eighth Amendment medical care claim against Defendant Nolan.

Defendant Nolan argues that Plaintiff only pleads that she arrived after the alleged assault to examine him and take four photographs of his injuries and that Plaintiff does not allege she had first-hand knowledge of the alleged assault and fails to plead facts adequate to support a claim that she was deliberately indifferent towards Plaintiff. (Doc. 61, p. 6; Doc. 54, p. 6). The Court agrees with Defendant Nolan. In his amended complaint, Plaintiff does not allege any facts that would support Defendant Nolan's awareness of an excessive risk to his health or safety or that suggest she disregarded such a risk. As Defendant Nolan points out, Plaintiff alleges he was examined and had photographs of his injuries taken. (Doc. 48, pp. 18, 20). Plaintiff therefore does not plead sufficient facts for the Court to reasonably expect "discovery will reveal the necessary elements" of a § 1983 Eighth Amendment medical claim against Defendant Nolan.[65] Accordingly, Plaintiff does not state a § 1983 Eighth Amendment medical claim against Defendant Nolan and that claim will be dismissed without prejudice. As this is the only claim against Defendant Nolan, she will be dismissed from this case.

---

[64] Defendant Nolan is also mentioned as part of all the Defendants Plaintiff concludes violated his rights on state, federal and international levels. (Doc. 48, p. 1).

[65] *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

### D.   PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 FAILURE TO INVESTIGATE CLAIM

In his amended complaint, Plaintiff asserts a § 1983 failure to investigate claim against Defendants Radziewicz, Barnacle and Evans. (Doc. 48, p. 26). Plaintiff asserts these Defendants "willfully denied" Plaintiff information in identifying his assailants and deliberately dragged their feet so video evidence would not be available, essentially failing to investigate Plaintiff's reports of abuse. *Id.* Plaintiff attaches to his amended complaint four letters he received from Defendant Radziewicz informing Plaintiff correspondence was delayed due to Covid-19 and that Defendant Radziewicz's office did not have authority to address Plaintiff's concerns. (Docs. 48-2, 48-3, 48-4, 48-5). Plaintiff alleges generally in his amended complaint that he had difficulty getting any information about who was handling the investigation and what the status was, and that he never received a response from Defendants Barnacle or Evans. (Doc. 48, pp. 20-22).

Defendants Radziewicz, Barnacle and Evans assert that the Third Circuit has not recognized a cause of action for an insufficient investigation. (Doc. 54, p. 6; Doc. 61, p. 7).

In response, Plaintiff alleges Defendants Radziewicz, Barnacle and Evans were obstructing justice by "sweeping [his] complaint under the rug . . . ." (Doc. 57, p. 4). Plaintiff then recites 18 U.S.C. § 1505, the federal criminal statute for obstruction of justice. *Id.* Plaintiff states that he is accusing these Defendants of

denying him information on the status of his January 6, 2020 complaint. (Doc. 57, p. 5). Plaintiff then details how allegations of misconduct are handled by the BII and alleges the BII went through a "counterfeit" investigation to avoid finding officer misconduct in response to Plaintiff's grievance and require proof beyond a reasonable doubt to sustain an inmate's allegation of excessive force. (Doc. 57, pp. 5-6). Plaintiff then alleges there is a code of silence within the prison, encouraging employees to remain silent about their peers' improper behavior.[66] (Doc. 57, p. 6). Plaintiff reiterates that Defendant Radziewicz acknowledged Plaintiff's grievance but provided no further information until April 2022 and that no response was ever received from Defendants Barnacle or Evans. (Doc. 59, p. 4). Plaintiff questions what the purpose of the BII and prison regulations are if failing to investigate does not suffice to sustain a § 1983 claim. *Id.*

---

[66] Plaintiff directs the Court's attention to the "incident reports," (Doc. 57-1), and states they "appear to be generic in nature. The reports of different officers are suspiciously identical this suggests 'rehearsed testimony' or 'sanitized reports.'" The Court is not entirely sure which claims Plaintiff believes the reports support, but it appears as though Plaintiff may citing them as an attempt to demonstrate the code of silence he alleges SCI Camp Hill has. (Doc. 57, p. 7). As explained above, the Court will not consider these documents. Even if the Court were to, it appears the content could be potentially harmful to Plaintiff as the reports state there was no assault and that Plaintiff was only denied meals for failure to comply with the rules and regulations of the RHU. (Doc. 57-1, pp. 6-10). What appears to be the BII investigation report would likewise be potentially harmful to Plaintiff, concluding his allegations of being assaulted were unfounded and that DIVAR video footage showed he was only denied two breakfast meals because of his refusal to follow the RHU rules and Regulations. (Doc. 57-1, p. 4).

"[A] prisoner has no free-standing constitutional right to an effective grievance process," therefore, Plaintiff "cannot maintain a constitutional claim against [Defendants Radziewicz, Barnacle and Evans] based upon his perception that [they] ignored and/or properly failed to properly investigate his grievances."[67] Plaintiff's § 1983 failure to investigate claim against Defendants Radziewicz, Barnacle and Evans will thus be dismissed with prejudice as amendment would be futile. As this is the only claim Plaintiff brings against Defendants Radziewicz, Barnacle and Evans, they will be dismissed from this case.

### E.   PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 CLAIM FOR VIOLATION OF PRISON POLICIES

Plaintiff asserts a § 1983 claim against Defendants Reid, Iagovino, Roth, Zimmerman and Kiner for violating DOC policies. (Doc. 48, pp. 27-28). Defendants Reid, Iagovino, Roth, Zimmerman and Kiner argue that a violation of prison regulations in itself is not a violation of the constitution and does not provide Plaintiff with a legal basis for claims of violating DOC Policies or regulations. (Doc. 54, pp. 6-7; Doc. 61, pp. 8).

---

[67] *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011). *See also Boyd v. Mason*, No. 3:20-CV-02403, 2021 WL 4237136 (M.D. Pa. May 28, 2021), *report and recommendation adopted*, No. 3:20-CV-02403, 2021 WL 4237134 (M.D. Pa. June 23, 2021), and *objections overruled*, No. 3:20-CV-02403, 2021 WL 4235396 (M.D. Pa. Sept. 16, 2021).

In response, Plaintiff questions what the purpose of prison regulations are if violation of them does not suffice to sustain a § 1983 claim. (Doc. 59, p. 4).

The Court agrees with Defendants Reid, Iagovino, Roth, Zimmerman and Kiner. The policy statements that Plaintiff cites to each state, "[t]his policy does not create rights in any person . . . ."[68] It is well-settled that violations of prison regulations in themselves are not constitutional violations.[69] To the extent Plaintiff is looking to hold Defendants Reid, Iagovino, Roth, Zimmerman and Kiner liable for their alleged violation of prison policies, he does not state a § 1983 claim. Therefore Plaintiff's § 1983 claims against Defendants Reid, Iagovino, Roth, Zimmerman and Kiner for violating prison policy will be dismissed with prejudice as amendment would be futile.

---

[68] Pa. DOC DC-ADM 001, Inmate Abuse Policy, p. 2 (2022); Pa. DOC DC-ADM 610, Food Service Policy, p. 2 (2016); Pa. DOC DC-ADM 201, Use of Force Policy, p. 3 (2010). All available at https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited December 7, 2023).

[69] *Washington v. Salamon*, No. 4:21-CV-01746, 2022 WL 4096877, at *5 (M.D. Pa. Sept. 7, 2022) (citing *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension")).

**F.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UNITED NATIONS'
RESOLUTIONS**

It is unclear whether Plaintiff is attempting to bring claims under the United

Nations resolutions[70] he cites to, the United Nations Basic Principles for the

Treatment of Prisoners[71] or the United Nations Standard Minimum Rules for the

Treatment of Prisoners (the Nelson Mandela Rules)[72]. In his amended complaint,

Plaintiff identifies the resolutions in his legal claims section, alleging violation of

them and appearing to assert claims under them. (Doc. 48, pp. 23-24, 26). However,

in his brief in opposition Plaintiff then states, "The U.N. Standard Minimum Rules

for the Treatment of Prisoners (the Nelson Mandela Rules) were introduced here to

show the magnitude of the core issue – prisoners [sic] rights."[73] (Doc. 59, p. 6)

---

[70] "Resolutions are formal expressions of the opinion or will of UN organs . . . . With the exception of decisions regarding payments to the regular and peacekeeping budgets of the UN, General Assembly resolutions/decisions are not binding for Member States." Dag Hammarskjöld Library, *What is the difference between a resolution and a decision?*, https://ask.un.org/faq/14484 (last visited December 7, 2023).

[71] G.A. Res. 45/111, Basic Principles for the Treatment of Prisoners (Dec. 14, 1990).

[72] G.A. Res. 70-175, United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules) (Dec. 17, 2005).

[73] In his brief in opposition Plaintiff states "[t]his is what the United Nations addressed in Geneva in 1957." (Doc. 57, p. 8) (emphasis in original). It is unclear to the Court what exactly Plaintiff means by this and if he is attempting to assert a claim related to some portion of the Geneva Convention. To the extent he is, Plaintiff may not amend his amended complaint to add a claim in his brief in opposition and so any such claim will be disregarded. *Commonwealth of Pa. ex rel. Zimmerman*, 836 F.2d at 181.

(emphasis in original). Defendants argue these claims would not fall within this Court's jurisdiction and that Plaintiff seems to concede a theory of liability under the United Nations resolutions is not actionable. (Doc. 54, p. 8; Doc. 61, p. 9). To the extent Plaintiff is attempting to state claims under these resolutions, he cannot to do so. Both of these resolutions are non-binding and provide no private right of action.[74] Therefore, to the extent Plaintiff attempts to bring claims under these United Nations resolutions, those claims will be dismissed with prejudice as any amendment would be futile.

### G. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S 18 PA. C.S. § 2710 (42 PA. C.S. § 8309(A)) CLAIM WILL BE DENIED

As explained above, while Plaintiff cites to 18 Pa. C.S. § 2710, the Pennsylvania Crimes Code for Ethnic Intimidation, it is quite clear he provided the wrong citation and that the language quoted in his amended complaint refers to 42 Pa. C.S. § 8309(a). (Doc. 48, p. 27). Thus, the Court has construed Plaintiff's amended complaint as bringing a claim under 42 Pa. C.S. § 8309(a) and not the Pennsylvania Crimes Code.

Defendants Reid, Iagovino, Roth, Zimmerman and Kiner only interpreted this hate crime claim as being under the Pennsylvania Crimes Code. (Doc. 54, p. 7; Doc.

---

[74] *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004); *United States v. Chapman*, 351 F. App'x 740, 741 (3d Cir. 2009); *Moore v. Montgomery Cnty Corr. Facility*, No. 20-CV-5172, 2021 WL 5177703 (E.D. Pa. Nov. 8, 2021) (collecting cases).

61, pp. 8-9). These Defendants assert that 18 Pa. C.S. § 2710 does not provide a private right of action. (Doc. 61, pp. 8-9). Defendants Reid, Iagovino, Roth, Zimmerman and Kiner are correct in this assertion. However, the language Plaintiff quoted in his amended complaint states that "a person who incurs injury to his person as a result of conduct described in 18 Pa. C.S.A. § 2710 (Relating to Intimidation/Malicious Intention) shall have a right of action against the actor(s) for relief." (Doc. 48, p. 27). It appears Plaintiff intended to bring a claim under 42 Pa. C.S. § 8309(a).

The Court has serious doubts about whether Plaintiff's amended complaint contains sufficient factual allegations to state a claim under 42 Pa. C.S. § 8309(a). However, Defendants Reid, Iagovino, Roth, Zimmerman and Kiner do not provide any arguments for dismissal other than Plaintiff cannot state a claim under the Pennsylvania Crimes Code. The Court will not make other arguments for dismissal for Defendants Reid, Iagovino, Roth, Zimmerman and Kiner. Therefore, the Court is constrained to deny Defendants Reid, Iagovino, Roth, Zimmerman and Kiner's Motion as to Plaintiff's 42 Pa. C.S. § 8309(a) claim.

## H.    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AS BARRED BY SOVEREIGN IMMUNITY WILL BE DENIED

Defendants Reid, Iagovino, Roth, Zimmerman and Kiner summarily and succinctly allege that Plaintiff's claims for IIED are without merit because those

claims are barred by Pennsylvania's sovereign immunity statute and intentional torts are not included in the listed exceptions. (Doc. 54, pp. 7; Doc. 61, p. 9). These defendants support this contention by citing to *Boone v. Pa. Office of Vocational Rehab*.[75] Defendants Reid, Iagovino, Roth, Zimmerman and Kiner thus conclude, "any claim that Plaintiff has a right of action for an intentional infliction of emotional distress theory under Pennsylvania law is without legal support and should be dismissed." (Doc. 61, p. 9).

Plaintiff responds to Defendants Reid, Iagovino, Roth, Zimmerman and Kiner's conclusions by repeating the standard for outrageousness (Doc. 57, p. 8), arguing that these Defendants are not above the law (Doc. 59, p. 5) and seemingly that these Defendants' conduct here should fall into the exception to sovereign immunity for medical-professional liability (Doc. 62, p. 2). Plaintiff also directs the Court's attention to two articles discussing Second Circuit and Fourth Circuit cases where qualified immunity was denied to prison officials.[76] (Doc. 62, p. 3; Doc. 62-1, p. 2; Doc. 62-2, p. 2).

As will be discussed below, Plaintiff has, at this stage, plausibly pleaded Defendants were not acting within the scope of their employment during the alleged

---

[75] *Boone v. Pa. Office of Vocational Rehab*, 373 F. Supp. 2d 484, 495 (M.D. Pa. 2005).

[76] Qualified immunity is not being asserted in this case and so these two cases are irrelevant.

assault and while withholding food from Plaintiff. (Doc. 48, p. 16). Therefore, the

determination of whether Defendants Reid, Iagovino, Roth, Zimmerman and Kiner

are entitled to sovereign immunity is not as straightforward as concluding these

Defendants are protected by it. *Id*.

> This Court determines whether a Commonwealth employee is protected
> by sovereign immunity by considering whether the ... employee was
> acting within the scope of his or her employment; whether the alleged
> act which causes injury was negligent and damages would be
> recoverable but for the availability of the immunity defense; and
> whether the act fits within one of the [ ] exceptions to sovereign
> immunity.[77]

In this case, Plaintiff cannot meet the second or third criteria. Plaintiff does not allege

the acts were negligent, instead specifically alleging they were intentional. Nor does

IIED fit into one of the exceptions to sovereign immunity.[78]

It appears, however, that at the motion to dismiss stage, Plaintiff has

adequately alleged Defendants Reid, Iagovino, Roth, Zimmerman and Kiner were

---

[77] *Minor v. Kraynak*, 155 A.3d 114, 122 (Pa. Commw. Ct. 2017) (quoting *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992)) (internal quotation marks omitted).

[78] The Court notes that Plaintiff's argument that Defendants Reid, Iagovino, Roth, Zimmerman and Kiner's conduct should fall into the medical-professional liability exception is without merit. Pennsylvania's Exceptions to sovereign immunity statute provides, "[t]he following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by: . . . (2) Medical-professional liability.--Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." 42 Pa. C.S. § 8522(b)(2). This is clearly inapplicable to Plaintiff's case.

not acting within the scope of their employment, which is a requirement of sovereign immunity.[79]

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another; it is not unexpected by the employer. *Fitzgerald v. McCutcheon*, 270 Pa. Superior Ct. 102, 410 A.2d 1270 (1979).[80]

The alleged conduct of Defendants, taken as true and construed in the light most favorable to Plaintiff, do not satisfy these criteria.[81]

First, the Court notes that Plaintiff's allegation that Defendants were not acting within the scope of their employment also distinguishes this case from *Boone*. In *Boone*, the court found that plaintiff's IIED claims were barred by sovereign immunity because liability for intentional torts is not included in the exceptions to sovereign immunity. However, the court noted, "Pennsylvania's sovereign immunity extends to "officials and employees acting within the scope of their duties. 1 Pa. Cons. Stat. Ann. § 2310. All of [p]laintiff's allegations against [Defendant] in Count III occurred while he was acting within the scope of his employment."[82] In this case,

---

[79] 1 Pa. C.S. § 2310.

[80] *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Cmwlth. Ct. 1988). *See also Minor*, 155 A.3d at 122; *Velykis v. Shannon*, No. 1:06-CV-0124, 2006 WL 3098025, at *3 (M.D. Pa. Oct. 30, 2006).

[81] *Jordan*, 20 F.3d at 1261.

[82] *Boone*, 373 F. Supp. 2d at 495 (internal quotation marks omitted).

Plaintiff specifically avers that the Defendants were not acting within the scope of their employment. (Doc. 48, p. 28).

As to the alleged assault on Plaintiff by Defendants Reid, Iagovino and Roth, the intentional use of force in this case, punching, kicking, shoving and threatening Plaintiff's life while he was in SL5 restraints, does not appear to have been conduct of the kind and nature those Defendants were employed to perform, nor does it appear it was intended to serve the DOC.[83] Further, the Commonwealth Court of Pennsylvania has "conclude[d] that a prison guard acts outside the scope of his duties when he or she uses deliberate and unjustified force on an inmate totally divorced from any need of the officer to exert control over the prisoner."[84] Plaintiff does not allege facts that suggest his conduct at the time of the use of force was justified. Therefore it does not appear that Defendants Reid, Iagovino and Roth are entitled to sovereign immunity at this stage of the proceedings.

Turning to Defendants Zimmerman and Kiner's alleged deliberate withholding of food, that conduct does not appear to have been conduct of the kind and nature those Defendants were employed to perform, nor does it appear it was

---

[83] *Natt*, 543 A.2d at 225. *See also Minor*, 155 A.3d at 122-24; *Velykis*, 2006 WL 3098025, at *3.

[84] *Minor*, 155 A.3d at 124 (quoting *Velykis*, 2006 WL 3098025, at *4) (internal quotation marks omitted).

## VI.   CONCLUSION

For the benefit of the parties and the Court, the Court will summarize the claims remaining in this case after the resolution of this motion:

1.   A 42 U.S.C. § 1983 Eighth Amendment Excessive Force claim against Defendants Reid, Iagovino and Roth in their individual capacities.

2.   A 42 U.S.C. § 1983 First Amendment Retaliation claim against Defendants Reid, Iagovino and Roth in their individual capacities.

3.   A 42 U.S.C. § 1983 Eighth Amendment Conditions of Confinement claim against Defendants Zimmerman and Kiner in their individual capacities.

4.   A 42 U.S.C. § 1983 First Amendment Retaliation claim against Defendants Zimmerman and Kiner in their individual capacities.

5.   A claim under 42 Pa. C.S. § 8309(a) against Defendants Reid, Iagovino, Roth, Zimmerman and Kiner.

6.   A claim for Intentional Infliction of Emotional Distress against Defendants Reid, Iagovino, Roth, Zimmerman and Kiner.

For the reasons explained herein, we will grant in part and deny in part Defendants' motion to dismiss the amended complaint as follows:

1.   Plaintiff's 42 U.S.C. § 1983 claims against Defendants in their official capacities will be DISMISSED.

2.   Plaintiff's 42 U.S.C. § 1983 Eighth Amendment failure to supervise claim will be DISMISSED.

3.   Plaintiff's 42 U.S.C. § 1983 Eighth Amendment medical care claim will be DISMISSED.

4.   Plaintiff's 42 U.S.C. § 1983 failure to investigate claim will be DISMISSED.

5.      Plaintiff's 42 U.S.C. § 1983 claims for violations of prison policy will be DISMISSED.

6.      Plaintiff's claims under the United Nations Resolutions will be DISMISSED.

7.      Defendant's Motion to Dismiss Plaintiff's 42 Pa. C.S. § 8309(a) claim will be DENIED.

8.      Defendant's Motion to Dismiss Plaintiff's Intentional Infliction of Emotional Distress claim will be DENIED.

9.      Defendants Harry, Gourley, Becker, Troutman, Nolan, Radziewicz, Barnacle and Evans will be DISMISSED.

10.     The Clerk of Court will be directed to TERMINATE Defendants Harry, Gourley, Becker, Troutman, Nolan, Radziewicz, Barnacle and Evans from this case.

An appropriate Order will issue.


Date: December 7, 2023                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge